SOLVENTOL CHEMICAL PRODUCTS, Inc., v. LANGFIELD.

Civil Action No. 1676.

District Court, E. D. Michigan, S. D.

Nov. 12, 1941.

878

Harness, Dickey & Pierce, of Detroit, Mich., for plaintiff.

Rogers, Woodson & Rogers, of Chicago, Ill. (Hill, Hamblen, Essery & Lewis, of Detroit, Mich., of counsel), for defendant.

LEDERLE, District Judge.

### Findings of Fact

1. Plaintiff, Solventol Chemical Products, Inc., has its principal place of business in the City of Detroit. Defendant, Conrad E. Langfield, doing business as The Solvite Company, is a resident of Northville, Michigan.

2. The complaint and the counter claim are based upon the trademark laws of the United States.

3. Both parties are engaged in the manufacture and sale of cleaning preparations. These products are sold in bulk to commercial establishments and at retail for ordinary household uses.

4. Defendant adopted its trademark "Solvite" in 1914, and it has been in continuous use by him since that date. It was registered in the United States Patent Office on June 12, 1928, under the Act of February 20, 1905.

5. Plaintiff adopted its name "Solventol" in 1932, and on October 14, 1936, filed an application in the United States Patent Office to register the name "Solventol" as its trademark for a general cleaning compound for use in household and industrial cleaning. On March 30, 1938, defendant filed a notice of opposition to the registration of the mark on the ground that it so nearly resembled the trademark, "Solvite", owned and registered by the defendant, as to be likely to cause confusion and mistake in the mind of the public and deceive purchasers. On April 24, 1939, the Examiner of Trademark Interferences in the Patent Office sustained defendant's opposition, holding that the plaintiff was not entitled to register the name "Solventol". On May 4, .1939, plaintiff filed an appeal from the decision of the Examiner of Interferences to the Commissioner of Patents, and on January 30, 1940, the Commissioner of Patents affirmed the decision of the Examiner of Trademark Interferences and refused to register plaintiff's trademark "Solventol." Langfield v. Solventol Chemical Products, Inc., 44 U.S.P. Q. 261.

6. Plaintiff's product is a water-soluble cleaner for general household and industrial use. Its product cannot be used with a dry cleaning solvent. Defendant's cleaner cannot be used with water, but is used in connection with cleaning solvents, such as gasoline or naphtha. The Examiner of Interferences found that "* * *

both (products) are cleaning compounds and while they are perhaps adapted for use, in general, by different classes of commercial or industrial concerns, both are sold in small containers for various household uses and are in part recommended for cleaning the same garments and household furnishings. It seems to the Examiner that these goods are even more closely related than the Opposer's dry cleaning soap, on the one hand, and a sanitary solvent for cleaning toilet bowls, on the other, which were held to possess the same descriptive properties in Langfield v. Solvit-All Corp. [Cust. & Pat.App.], 49 F.2d 480."

The evidence produced in this case fully supports the decisions made by the Patent Office and establishes that the two marks are confusingly similar.

7. On February 9, 1940, plaintiff filed this complaint under Revised Statutes, § 4915, 35 U.S.C.A. § 63, seeking a decree authorizing the Commissioner of Patents to register its trade-mark in the United States Patent Office. The defendant filed a counter-claim charging the plaintiff with trademark infringement by reason of the use of the mark "Solventol" and asked for an injunction and an accounting, but at the hearing withdrew his claim for an accounting.

8. The defendant never heard of "Solventol" until March, 1938, and shortly thereafter requested the plaintiff to discontinue the use of this name. Mr. Charles A. Campbell, president of the plaintiff, replied that he would take the matter up with the company's attorneys and undoubtedly the defendant would hear from them. The plaintiff's attorneys did not discuss the matter with the defendant but proceeded with their attempts to register the plaintiff's trademark in the Patent Office.

9. From 1932 to 1936, plaintiff sold its product in bulk quantities of 100 pounds or more directly to commercial and industrial concerns, who used it for their own cleaning. In 1936, the plaintiff began selling its compound at retail. Since the beginning of the business in 1932, the plaintiff's sales have been as follows:

| Year | Total Weight | Value Retail Sales | Value Total Sales |
|---|---|---|---|
| 1932 to 1935 | 1,200,000 lbs. | none | $ 84,000.00 |
| 1936 | 1,540,000 lbs. | $ 4,658.95 | 107,906.72 |
| 1937 | 2,000,000 lbs. | 7,718.23 | 150,660.70 |
| 1938 | 2,370,000 lbs. | 38,095.50 | 177,036.27 |
| 1939 | 3,560,000 lbs. | 80,233.45 | 284,857.33 |
| 1940 to Nov. 30 | 3,480,000 lbs. | 106,410.67 | 296,765.92 |
| | 14,150,000 lbs. | $237,116.80 | $1,101,226.94 |

During the years 1936 to 1940, both inclusive, the defendant sold approximately 3,000 pounds of his product, having a sales value of approximately $4,600.

Plaintiff has actively promoted the retail sales of its product by the employment of house-to-house canvassers and demonstrators, and has expended upwards of $400,000 for this purpose. The defendant has spent approximately $75,000 for advertising its product since 1914, but has spent practically nothing for advertising or sales promotion since 1930.

10. Plaintiff adopted the arbitrary and fanciful name "Solventol" without making any investigation to determine if a name confusingly similar was in use for products of the same descriptive properties. Purchasers of the plaintiff's product in bulk are experienced buyers, and such sales are made on the merits of the product directly by representatives of the plaintiff company. The trademark has little or no significance as to such sales.

At or about the time plaintiff started to actively promote the sales of its product at retail, it also recognized the need for a trademark and filed its application for registration of the name "Solventol". If a search had been made at that time, it would have been discovered that the defendant's mark was registered, and that the defendant was diligently protecting its interest in that trademark in the Patent Office and in the courts.

The case of Langfield v. Solvit-All Corp., Cust. & Pat.App., 49 F.2d 480, was decided April 29, 1931. The defendant's products have been on sale continuously since 1914. Since 1928 its containers have carried the notice of trademark registration. If the plaintiff had made an investigation to determine its right to use the trademark it adopted, it could have discovered the defendant's product in Detroit retail establishments. Before starting out on an expensive sales campaign, as the plaintiff did in 1936, a reasonably prudent man would have made an investigation to determine whether it had a right to use the trademark "Solventol". All of the expenditures made in connection with its retail sales program were made either through its negligence, or through its failure to recognize that the right to the exclusive use of an owner's trademark is a property right. It may be that the discontinuance of the use of the name "Solventol" will result in serious consequences

to the plaintiff's business. This is the penalty which it will have to pay for its negligence and its disregard of the defendant's rights.

If the only persons purchasing both parties' products were deaf mutes, the plaintiff's argument that the two names are dissimilar in appearance would be effective. It must be recognized, however, that in retail business the transactions are conducted orally and the sound of a name is of great significance. Likewise, we must recognize that much of the advertising, in these times, is conducted by radio, and I know of no effective way of avoiding confusion between the sound of the defendant's trademark "Solvite" and the plaintiff's "Solventol."

The fact that the defendant's business is very small compared to the business transacted by the plaintiff is of no significance. The fact that the defendant has spent practically no money since 1930 in advertising its business is of no consequence. The defendant has shown by his conduct that he has no intention of abandoning his rights in his trademark.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of the complaint and counter-claim. American Steel Foundries v. Robertson, 262 U. S. 209, 43 S.Ct. 541, 67 L.Ed. 953; Id., 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317.

2. The statute governing the right to register a trademark insofar as it prohibits the registration of a mark which is confusingly similar to a prior trademark is simply declaratory of common law regarding trademark infringement. American Steel Foundries v. Robertson, supra.

3. Defendant's registration of the trademark "Solvite" is valid and subsisting, and the defendant is the owner thereof. The goods to which the parties apply their marks are merchandise of substantially the same descriptive properties. Langfield v. Solventol Chemical Products, Inc., 44 U.S. P.Q. I.

4. The decision of the Patent Office must be accepted as controlling unless the contrary is established by evidence, which in character and amount carries through to a conviction. The burden was on the plaintiff to show by clear and convincing evidence that the decision of the Commissioner of Patents is erroneous before it is entitled to register its trademark. This it has failed to do. Century Distilling Company v. Continental Distilling Company, 3 Cir., 106 F.2d 486. Yale Electric Corp. v. Robertson, 2 Cir., 26 F. 2d 972.

5. The plaintiff did not acquire the right to use defendant's trademark by the expenditure of a large sum of money to build up its good will with the mistaken idea that it had a right to do so; and it follows that it did not acquire the right to use a trademark confusingly similar to that of the defendant. The defendant has not been guilty of laches but objected to the plaintiff's conduct as soon as he discovered it, and has persistently and vigorously asserted his right to the registered trademark. No one has the right to use a technical trademark of another in connection with like goods; but if he does and persists after being notified to desist, fraud and imposition, which constitute the essence of the injury, will be presumed and relief granted. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828. Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316.

6. Two trademarks are substantially the same in legal contemplation if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives. Where the similarity is sufficient to convey a false impression to the public mind and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matter, it is sufficient to give the injured party a right to redress. McLean v. Fleming, supra.

7. The Commissioner of Patents rightly refused to register the plaintiff's mark. A judgment may be entered dismissing the complaint and enjoining the plaintiff from using the name "Solventol" as a trademark for a cleaning compound in accordance with these findings and conclusions.